UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                        :

U.S. UNDERWRITERS INSURANCE      :    MEMORANDUM AND ORDER
COMPANY,

                        :    10-cv-2353 (WFK) (JMA)

         Plaintiff,        :

                        :

        -against-        :

                        :

ALLSTATE INSURANCE COMPANY, as   :
subrogee of Raymond Bello and Donna Bello,  :
RAYMOND BELLO, DONNA BELLO, 431  :
AVENUE P LLC, RALPH SITT, CAROLYN  :
KASSIN, EDDIE SITT, DAVID SITT, FIMOR  :
CONSTRUCTION CORP., HUDSON MERIDIAN :
CONSTRUCTION GROUP and MMG      :
CONSTRUCTION INC.,

                        :

         Defendants.      :

                        :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ II, United States District Judge**

      This matter arises out of four underlying actions in the New York State Courts (the "State

Actions") relating to property damage at the residence of Defendants Raymond and Donna Bello

(the "Bellos"). Def. Allstate's R. 56.1 St. at ¶ 1. According to the complaints in these actions,

the Bello residence was extensively damaged by negligent excavation or construction work at an

adjoining lot variously undertaken by or on behalf of Defendant 431 Ave. P LLC ("431 Ave. P").

*See* Decl. of Steven Verveniotis ("Verveniotis Decl."), Ex. A–D (summons and verified

complaints in the underlying state actions). Mr. Bello filed a claim with his own insurance

carrier, Defendant Allstate Insurance Company ("Allstate"), which paid him several hundred

1

thousand dollars to cover the home. Allstate's R. 56. 1 St. of Add. Material Facts at ¶ 41;[1] Verveniotis Decl, Ex. D, at ¶ 15. Allstate then filed three separate actions in state court against 431 Ave. P and several companies 431 Ave. P had hired to conduct excavation or construction work on its property, including Defendants Fimor Construction Corp. ("Fimor"), Hudson Meridian Construction Group ("Hudson"), and MMG Construction Inc. ("MMG"), seeking to hold those companies responsible for the damage to the Bellos' home and to recover the funds it had paid to the Bellos. Allstate's R. 56.1 St. at ¶ 1; Verveniotis Decl., Ex. A–C. Mr. Bello alleges the money he received from Allstate did not cover all of the damage to his home, and he filed a separate state court action against 431 Ave. P, Fimor, and MMG to recover money for the uncovered damage to his residence. Pl.'s R. 56.1 St. at ¶ 94; Verveniotis Decl., Ex. D, at ¶¶ 13–16.

For at least a portion of the relevant time period, 431 Ave. P was covered by an insurance policy (the "Insurance Policy") issued by U.S. Underwriters Insurance Company ("Plaintiff"). Pl.'s R. 56.1 St. at ¶ 2; Aff. of Carol Ann Myrtetus ("Myrtetus Aff."), Ex. A. The Insurance Policy listed Eddie Sitt, Ralph Sitt, Carolyn Kassin, and David Sitt (the "Individual Defendants") as separate named insureds under the policy. Myrtetus Aff., Ex. A. Eddie Sitt was the onsite representative of 431 Ave. P. Aff. of Eddie Sitt ("Sitt Aff."), at ¶ 1. Except as regards Eddie Sitt, there is no evidence in the record explaining the relationship of the Individual Defendants to 431 Ave. P.

Because a judgment against 431 Ave. P in the State Actions could ultimately lead to payment of a claim under the Insurance Policy, Plaintiff retained counsel to represent 431 Ave P

---

[1] Allstate submitted, as a single document, a Rule 56.1 Statement, which responds point by point to Plaintiff's Rule 56.1 Statement, and a Statement of Additional Material Facts. Allstate restarted the numbering in the Statement of Additional Material Facts, meaning that the document has two paragraphs 1, two paragraphs 2, etc. For clarity, this Court refers to the first half of the document as "Allstate's R. 56.1 St." and the second (re-numbered) half of the document as "Allstate's R. 56.1 St. of Add. Material Facts."

in the underlying state court actions.[2] Myrtetus Aff. at ¶¶ 20, 22; Pl.'s Reply Br. at 8–9. On May 24, 2010, Plaintiff initiated this action in federal court seeking a declaratory judgment that, with respect to the State Actions, it is not obligated to defend or indemnify its insureds, 431 Ave. P, Ralph Sitt, Carolyn Kassin, Eddie Sitt, and David Sitt (collectively "the Insured Defendants"); provide coverage for any claims arising out of work conducted on 431 Ave. P's behalf by Fimor, Hudson,[3] and MMG; or pay any claim to Allstate, as subrogee of the Bellos, or the Bellos themselves. *See generally* Compl.; Pl.'s Br. at 1. According to Plaintiff, these claims are not covered by the Insurance Policy because the Insured Defendants failed to provide Plaintiff with timely notice of the claims. Pl.'s Br. at 2–11. Alternatively, Plaintiff asserts that any damage to the Bello home is not covered by the Insurance Policy because the Bellos' claims fall within a number of specific policy exclusions. *Id.* at 12–25. The Insured Defendants dispute that their notice was untimely, and argue that even if it was untimely, Plaintiff is estopped from disclaiming coverage. Sitt Aff. at ¶ 62; Insured Defs.' Br. at 5–9. The Insured Defendants also dispute that any of the policy exclusions apply. Allstate joins in these defenses and also asserts it has an independent right to provide notice to Plaintiff, which it timely provided. *See generally* Allstate's Br.

Plaintiff moves this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons provided below, this Court grants Plaintiff's motion as to the Insured Defendants and Allstate. This Court denies without prejudice Plaintiff's motion as to MMG and the Bellos, who have failed to appear in this action, and will grant appropriate relief against MMG and the Bellos upon receipt of the proper motion papers seeking default judgment against those Defendants.

---

[2] None of the Individual Defendants in this action were named as defendants in the underlying state actions. *See* Verveniotis Decl., Ex. A–D.

[3] Plaintiff discontinued its claims against Hudson on May 10, 2013. Dkt. No. 57.

# FACTUAL BACKGROUND

**Damage to the Bello's Residence**

On March 14, 2006, Mr. Bello notified his insurance company, Allstate, that his residence had been damaged. Allstate's R. 56.1 St. of Add. Material Facts at ¶ 41; Aff. of Bernadette Paige ("Paige Aff."), at ¶ 8. Mr. Bello's home was adjacent to property owned by 431 Ave. P. Myrtetus Aff. at ¶¶ 10, 24, 29 (variously describing the Bello residence as adjacent to or adjoining the property owned by 431 Ave. P).

In June 2006, Allstate twice attempted to reach Eddie Sitt, 431 Ave. P's on site representative, by phone. Allstate's R. 56.1 St. of Add. Material Facts at ¶ 42–43; Paige Aff. at ¶ 8; Sitt Aff. at ¶ 1. When those attempts were unsuccessful, Allstate wrote a letter to Eddie Sitt, via a company it believed to be called Sitt Corporation, to inform him that Allstate believed he was responsible for damaging the Bello home and to ask him to contact his insurance carrier.[4] Allstate's R. 56.1 St. of Add. Material Facts at ¶¶ 42–44; Myrtetus Aff., Ex. K. There is no evidence in the record that either Eddie Sitt or 431 Ave. P responded to Allstate's attempts to contact them. *See* Allstate's R. 56.1 St. of Add. Material Facts at ¶¶ 42–48. One year later, in June 2007, Allstate sent a second letter to 431 Ave P informing it that the Bello residence had sustained damage due to construction and demolition work undertaken by or on behalf of 431 Ave. P. Allstate's R. 56.1 St. of Add. Material Facts at ¶ 47; Myrtetus Aff., Ex. F.

Mr. Bello ultimately received several hundred thousand dollars from Allstate to cover damage to his home. Verveniotis Decl, Ex. D, at ¶ 15. Mr. Bello alleges the money he received from Allstate did not cover all of the damage to his home, and he filed a separate state court

---

[4] The Bello home was adjacent to property owned by 431 Ave. P, *see* Sitt Aff. at ¶¶ 7–8, and there is no evidence in the record that any other corporation besides 431 Ave. P, including its contractors or subcontractors, undertook any activity at that location. Although the Allstate letter was addressed only to Eddie Sitt and the Sitt Corporation, the Insured Defendants have not argued or presented any evidence they believed this error somehow indicated an entity besides 431 Ave. P was legally responsible for the damage to the Bello home.

action against 431 Ave. P, Fimor, and MMG to recover money for the uncovered damage to his residence. *Id.* at ¶¶ 13–16; Pl.'s R. 56.1 St. at ¶ 94.

**The Underlying Actions**

In July 2007, Allstate, as subrogee of the Bellos, initiated an action against 431 Ave P, Fimor, and Hudson in New York State Supreme Court, Kings County under Index No. 25621/07 to recover the money Allstate had paid to the Bellos. Allstate's R. 56.1 St. at ¶ 1. Allstate filed two related actions in 2008 and 2009. *Id.* Mr. Bello also filed a separate property tort suit in March 2008 against 431 Ave. P, Fimor, and MMG seeking to recover money for that portion of the damage to his residence not covered by Allstate. Pl.'s R. 56.1 St. at ¶ 94. All four actions (collectively, the "State Actions") were eventually consolidated under Index No. 2499/09. Allstate's R. 56.1 St. at ¶ 1. Although Plaintiff is not a party in any of these suits, a judgment against its insured, 431 Ave P., could lead to an attempt to recover under the policy. Plaintiff has been defending 431 Ave. P in the underlying state court actions in order to assist 431 Ave. P in avoiding liability on the underlying claims, which Plaintiff might then be responsible for paying. *See* Pl.'s Reply Br. at 8–9.

**The U.S. Underwriters Policy and Disclaimer of Coverage**

On January 23, 2006, Plaintiff issued the Insurance Policy to 431 Ave. P for the lot adjoining the Bello's residence. Pl.'s R. 56.1 St. at ¶ 2; Myrtetus Aff., Ex. A. Ralph Sitt, Carolyn Kassin, Eddie Sitt, and David Sitt were listed as separate named insureds under the policy. Myrtetus Aff., Ex. A. The Insurance Policy described the covered property as "vacant land," and contained numerous exclusions, namely for construction operations, use of independent contractors, and pre-existing or progressive damage. *Id.*; Pl.'s R. 56.1 St. at ¶¶ 5–8. The policy also required the named insureds to notify Plaintiff "as soon as practicable of an

5

'occurrence' or an offense, which may result in a claim." Pl.'s R. 56.1 St. at ¶ 3; Myrtetus Aff., Ex. A.

Plaintiff first received notice of the Bellos' potential claim on June 22, 2007. Myrtetus Aff. at ¶ 10. On October 2, 2007, after the first Allstate action was filed in state court, Plaintiff sent a letter to 431 Ave. P, Ralph Sitt, Carolyn Kassin, Eddie Sitt, and Davit Sitt informing them that it had retained a law firm to defend 431 Ave. P. Myrtetus Aff., Ex. O. The letter reserved all of Plaintiff's rights under the policy, in particular the right to invoke the exclusions for independent contractors, construction, and pre-existing or progressive damage. *Id.*

On April 24, 2008, Plaintiff sent a letter to Ralph Sitt, Carolyn Kassin, Eddie Sitt, and Davit Sitt disclaiming coverage under the policy with regards to the underlying lawsuits. *Id.*, Ex. P. Nonetheless, Plaintiff indicated that it would continue to defend the underlying lawsuits until there was a judicial determination of Plaintiff's rights and obligations under the policy. *Id.*

**This Action**

Plaintiff filed this action on May 24, 2010, seeking a declaratory judgment that, with respect to the State Actions, it is not obligated to defend or indemnify the Insured Defendants; provide coverage for any claims arising out of work conducted on 431 Ave. P's behalf by Fimor, Hudson,[5] and MMG; or pay any claim to the Bellos or Allstate, as subrogee of the Bellos. *See generally* Compl.; Pl.'s Br. at 1.

## STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess

---

[5] Plaintiff discontinued its claims against Hudson on May 10, 2013. Dkt. No. 57.

whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal citations and quotation marks omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment."). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

## ANALYSIS

### I. The Insured Defendants Did Not Provide Timely Notice Under the Policy

It is well-settled that, under New York law, compliance with the notice requirements of an insurance policy is a "condition precedent" to an insurer's liability under the policy. *OneBeacon Ins. Co. v. Freundschuh*, No. 08-CV-823, 2011 WL 3739427, at *4 (W.D.N.Y. Aug.

24, 2011) (Curtin, J.) (quoting *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*,

822 F.2d 267, 271 (2d Cir. 1987) (citing *Sec. Mut. Ins. Co. v. Acker–Fitzsimons Corp.*, 31

N.Y.2d 436, 440, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972))); *see also Sparacino v. Pawtucket

Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir. 1995). Such notice provisions "enable insurers to make

a timely investigation of relevant events and exercise early control over a claim," potentially

leading to settlement before litigation. *Commercial Union Ins. Co.*, 822 F.2d at 271. In addition,

when insurers have timely notice of relevant occurrences, they can take steps to eliminate the

risk of similar future occurrences, establish more accurate renewal premiums, and maintain

adequate reserves. *Id.*

Where, as here, an insurance policy requires an insured to provide the insurer with timely

notice of a potential claim, the notice must be provided to the insurer "within a reasonable time

in view of all the facts and circumstances" of the case. *Sayed v. Macari*, 296 A.D.2d 396, 397,

744 N.Y.S.2d 509, 510 (N.Y. App. Div. 2d Dep't 2002); *Ponok Realty Corp. v. United Nat'l

Specialty Ins. Co.*, 69 A.D.3d 596, 597, 893 N.Y.S.2d 125, 127 (N.Y. App. Div. 2d Dep't 2010).

As a general rule, under New York law, periods as short as two months are unreasonable as a

matter of law. *See Prof'l Prod. Research Inc. v. Gen. Star Indem. Co.*, 623 F. Supp. 2d 438, 445

(S.D.N.Y. 2008) (McMahon, J.) (collecting cases). Late notice of an occurrence by an insured is

a "complete defense" to coverage, regardless of whether the insurance company was prejudiced

by the delay.[6] *Kaesong Corp. v. United Nat'l Specialty Ins. Co.*, No. 07 CV 2897, 2008 WL

---

[6] "In 2008, the New York legislature amended New York Insurance Law to require the insurer, in cases in which notice is given to the insurer within two years of the occurrence, to show that it was prejudiced by the untimely notice." *Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, No. 11 Civ. 7565, 2013 WL 152854, at *7 n.3 (S.D.N.Y. Jan. 15, 2013) (Cote, J.) (citing An Act to Amend the Civil Practice Law and Rules and the Insurance Law, in Relation to Liability Insurance Policies § 8, 2008 N.Y. Sess. Laws 388 (McKinney 2008). However, the amendment applies only to insurance policies that were issued or delivered after January 17, 2009. *Id.* In this case, the Insurance Policy was issued in 2006, and therefore the former version of New York Insurance Law, which does not require the insurer to show prejudice, applies.

1902684, at *2 (E.D.N.Y. Apr. 25, 2008) (Glasser, J.) (citing *Am. Home Assurance Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433, 440, 661 N.Y.S.2d 584, 586, 684 N.E.2d 14, 16 (N.Y. 1997)); *see also Green Door Realty v. TIG Ins. Co.*, 329 F.3d 282, 287 (2d Cir. 2003).

An insured's failure to give timely notice to its insurer of an occurrence "may be excused . . . by proof that the insured either lacked knowledge of the occurrence or had a reasonable belief of nonliability." *Sparacino*, 50 F.3d at 143. "That is, a delay will be excused if the insured 'in good faith reasonably believes there is no policy coverage or that the insured was not liable on the main action.'" *Id.*; *see also Beach Haven Apartments, No. 6, Inc. v. Allcity Ins. Co.*, 182 A.D.2d 658, 659, 581 N.Y.S.2d 689, 690 (N.Y. App. Div. 2d Dep't 1992) ("[T]he insured's good-faith belief that it is not liable will excuse a failure to give timely notice if the belief is reasonable under all the circumstances of the case."). With respect to whether the insured lacked knowledge of the occurrence, the court must examine "the facts known to the insured during the relevant period and whether such facts would have alerted a reasonable person that there had been an occurrence or prompted a reasonable person to inquire as to whether there had been an occurrence." *Atl. Cas. Ins. Co. v. Northway Pool Serv., Inc.*, 649 F. Supp. 2d 78, 82 (E.D.N.Y. 2009) (Spatt, J.); *see also Sparacino*, 50 F.3d at 143 ("The test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim."). This is an "objective test, asking what the insured's officers 'reasonably could or should have concluded.'" *OneBeacon*, 2011 WL 3739427, at *5. Alternatively, "a delay will be excused if the insured, in good faith, believed that the occurrence could not lead to liability that is covered under the policy." *Atl. Cas. Ins. Co.*, 649 F. Supp. 2d at 82. "The reasonableness of the belief does not turn on 'whether the insured believes he will ultimately be found liable for the injury, but

9

whether he has a reasonable basis for a belief that no claim will be asserted against him,'"

whether meritorious or not. *Kaesong Corp.*, 2008 WL 1902684 at *3 (quoting *SSBSS Realty*

*Corp. v. Pub. Serv. Mut. Ins. Co.*, 253 A.D.2d 583, 584, 677 N.Y.S.2d 136, 138 (N.Y. App. Div.

1st Dep't 1998)).

"[T]he question of the reasonableness of an excuse for late notice is generally a question

of fact for the jury." *Green Door Realty Corp.*, 329 F.3d at 287 (internal quotation marks

omitted). Nonetheless, "a delay may be unreasonable as a matter of law when either no excuse is

advanced or the proffered excuse is meritless." *Id.* "The burden of demonstrating the

reasonableness of the excuse lies with the insured." *Ponok Realty*, 69 A.D.3d at 597.

In this case, it is undisputed that the Insurance Policy had a notice of occurrence

provision requiring the Insured Defendants to notify Plaintiff "as soon as practicable of an

'occurrence' or an offense which may result in a claim." Myrtetus Aff., Ex. A. It is also

undisputed that the Insured Defendants first notified Plaintiff of a potential claim in June 2007.

*See* Sitt Aff. at ¶¶ 37–38. Thus, the sole issue before the Court is whether the Insured

Defendants' June 2007 notice was timely.

According to Plaintiff, the Insured Defendants were notified of potential property damage

to the Bello premises as early as 2005. Pl.'s R. 56.1 St at ¶¶ 12–18. Plaintiff points to deposition

testimony by Eddie Sitt, one of the Insured Defendants, that he was informed of damage to the

Bello home and went to view that damage in 2005.[7] *Id.* at ¶¶ 14–18. In addition, Plaintiff cites a

report prepared by Langan Engineering & Environmental Services for 431 Ave. P employee

---

[7] The Insured Defendants allege Plaintiff "has consistently . . . mischaracterized Eddie Sitt's testimony" and that "431 [Ave. P] will not admit any testimony attributed to Eddie Sitt unless it is a direct quote and utilized in the proper context in which it was given." Insured Defs.' R. 56.1 St. at ¶¶ 13–25, 27–32, 35, 39–40. These blanket denials do not meet the Insured Defendants' burden under Fed. R. Civ. P. 56(c) to establish a genuine issue of material fact by "citing to particular parts of materials in the record." Moreover, this Court bases its decision on its own independent review of the record, including Eddie Sitt's deposition testimony.

Lorenzo Esposito, which described property damage at the Bello home that was observed during inspections performed on April 21, 2006 and June 13, 2006. *Id.* at ¶¶ 18–19, 29. Plaintiff further cites evidence that Eddie Sitt, *inter alia*:

- admitted that excavation work performed on 431 Ave P's property came within three feet of the Bellos' property line and within eleven feet of the Bello home, *id.* at ¶¶ 14, 16;

- admitted that Alfred Bello, Mr. Bello's son, told him the Bellos believed the damage to their home was due to construction on 431 Ave P's property, *id.* at ¶¶ 16–17;

- discussed damage to the Bello property with Fimor, and that Fimor indicated it would fix whatever damage had occurred at the Bello residence, *id.* at ¶ 20;

- admitted there had been complaints by unspecified individuals about damage at the Bello residence prior to November 27, 2006, when Mr. Bello granted an easement to 431 Ave. P, *id.* at ¶ 21;

- admitted that damage to the Bello home may have been caused by 431 Ave. P's contractors or subcontractors, *id.* at ¶ 24; and

- admitted that, in 2006, work was stopped at 431 Ave. P due to damage at the Bello residence, *id.* at ¶¶ 25–27.

In addition, Plaintiff cites evidence that David Sitt and Ralph Sitt received an email on July 2, 2006 from a 431 Ave. P employee suggesting the company pay Mr. Bello as much as $100,000 to settle any claims with him. *Id.* at ¶¶ 36–37. Finally, Plaintiff relies on deposition testimony by Eddie Sitt admitting he received a letter from Allstate regarding damage to the Bello premises. *Id.* at ¶ 23. In this letter, dated June 2, 2006, Allstate indicated it believed Eddie Sitt and the Sitt Corporation[8] were "legally responsible for the damages" to the Bello home.[9]

---

[8] The Bello home was adjacent to property owned by 431 Ave. P, *see* Sitt Aff. at ¶¶ 7–8, and there is no evidence in the record that any other corporation besides 431 Ave. P or its contractors or subcontractors undertook any activity at that location. Although the Allstate letter was incorrectly addressed to the Sitt Corporation, the Insured Defendants have not argued or presented any evidence they believed this error somehow indicated another entity was legally responsible for the damage to the Bello home.

[9] The Insured Defendants have not offered any evidence that they did not receive this letter. *See* Insured Defs.' R. 56.1 St. at ¶ 23; *see also* Fed. R. Evid. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must

Myrtetus Aff., Ex. K. Because the Insured Defendants did not provide notice of this potential claim to Plaintiff until more than a year later in June 2007, *see* Sitt Aff. at ¶¶ 37–38, Plaintiff alleges their notice was untimely and that Plaintiff was therefore entitled to disclaim coverage under the Insurance Policy, Pl.'s Br. at 2–11.

The Insured Defendants dispute their notice was untimely. Sitt Aff. at ¶ 62. According to an affidavit by Eddie Sitt, the Insured Defendants believed "that [Mr.] Bello's claims of damage to [his] Property were fraudulent and fabricated in an attempt by Bello to have his dilapidated house repaired." *Id.*; *see also* Insured Defs.' Br. at 11, 13–14. This is the sole rationale proffered by the Insured Defendants for not notifying Plaintiff about the possibility of a claim prior to June 2007.

Based on the facts known to the insured during the relevant period, this Court concludes that the notice provision was triggered by June 2006 at the latest. *See Sparacino*, 50 F.3d at 143; *Atl. Cas. Ins. Co.*, 649 F. Supp. 2d at 82. By that date, Eddie Sitt, 431 Ave. P's onsite representative, had (1) been informed of damage at the Bello residence, (2) been told that the Bellos believed the damage to their home was due to construction on 431 Ave P's property, (3) viewed the damage himself, (4) received a report confirming the damage, and (5) received a letter from the Bellos' insurance carrier indicating that it held him and his corporation "legally responsible" for that damage. Faced with all of these circumstances, the Insured Defendants "had information which would suggest to a reasonable person the possibility of a claim or which appeared reasonably likely to involve liability on the part of its insurers" by June 2006. *Olin Corp. v. Ins. Co. of N. Am.*, 743 F. Supp. 1044, 1054 (S.D.N.Y. 1990) (Sand, J.) (determining, on a motion for summary judgment, when notice accrued), *aff'd*, 929 F.2d 62 (2d Cir. 1991).

support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.").

Because the Insured Defendants waited a full year to notify Plaintiff of this potential claim, their notice was untimely as a matter of law. *See Prof'l Prod. Research Inc.*, 623 F. Supp. 2d at 445 (delays as short as two months are generally unreasonable as a matter of law).

The Insured Defendants have failed to meet their burden of demonstrating they had a reasonable excuse for their year-long delay in notifying Plaintiff. In their brief, the Insured Defendants state "431 [Ave. P] has no liability to Bello because his claims are fraudulent" and "431 [Ave. P] has denied that any of the alleged damages resulted from 431's conduct and the Bello's [sic] claims are fraudulent." Insured Defs.' Br. at 11, 13–14. The sole evidence cited for these statements is a single line in the affidavit of Eddie Sitt, in which he states the Insured Defendants believed "that [Mr.] Bello's claims of damage to [his] Property were fraudulent and fabricated in an attempt by Bello to have his dilapidated house repaired." Sitt Aff. at ¶ 62. Neither the affidavit of Eddie Sitt nor the brief of the Insured Defendants cites any evidence indicating the Bellos' claims are, in fact, fraudulent, or that it would have been reasonable for the Insured Defendants to believe the Bellos' claims were fraudulent. The Insured Defendants' unsupported statements that they believed the Bellos' claims were fraudulent are insufficient to meet their burden of demonstrating the reasonableness of their delay. *See, e.g.*, *Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282, 288 (2d Cir. 2003) (affirming the district court's conclusion that the "factual record [left] no room for doubt that Plaintiffs were painfully aware that they could be liable as a result of the fire, thereby triggering the need to provide notice").

Moreover, even if this Court were to consider the merits of the Insured Defendants' excuse, that excuse fails as a matter of law. According to the Insured Defendants, their notice was not untimely because "431 [Ave. P] has denied that any of the alleged damages resulted from 431's conduct and the Bello's [sic] claims are fraudulent." Insured Defs.' Br. at 13–14; Sitt

13

Aff. at ¶ 62. However, in determining whether an insured was required to provide notice to its insurer, "the issue is not 'whether the insured believes he will ultimately be found liable for the injury, but whether he has a reasonable basis for a belief that no claim will be asserted against him.'" *OneBeacon*, 2011 WL 3739427, at *6 (quoting *SSBSS Realty Corp.*, 253 A.D.2d at 584). In this case, Eddie Sitt was informed that the Bellos believed the damage to their home was due to construction on 431 Ave P's property and that they held 431 Ave P responsible. Moreover, Eddie Sitt received a letter from the Bellos' insurance carrier indicating that it held him and his corporation "legally responsible" for that damage and asking him to forward the letter to his insurance carrier. Even assuming the Insured Defendants reasonably believed the Bellos' claims were fraudulent, under the circumstances, they could not have reasonably believed no claim would be asserted against them and their insurance carrier after they received Allstate's letter regarding legal responsibility. Consequently, the Insured Defendants' proffered excuse is meritless and fails as a matter of law.

In sum, the Insured Defendants had information by at least June 2006 from which a reasonable person would have recognized the possibility of a claim against them. Nonetheless, the Insured Defendants unreasonably delayed notifying Plaintiff of that claim until June 2007. Consequently, the Insured Defendants' notice was untimely a matter of law, and Plaintiff was entitled to disclaim coverage.[10]

## II.     Plaintiff is Not Estopped From Disclaiming Coverage to the Insured Defendants

On April 24, 2008, Plaintiff sent a letter to Ralph Sitt, Carolyn Kassin, Eddie Sitt, and Davit Sitt disclaiming coverage under the policy with regard to the underlying lawsuits.

---

[10] Fimor submitted an affidavit in opposition to Plaintiff's summary judgment motion adopting the arguments of its co-defendants, Aff. in Opp. of Paul Kovner, Dkt. No. 51, at ¶ 3, including, presumably, that the Insured Defendants' notice was timely. Therefore, for the same reasons discussed above, Plaintiff's motion for summary judgment is granted as to Fimor.

Myrtetus Aff., Ex. P. This letter was not addressed to 431 Ave. P and did not indicate that it was disclaiming coverage as to 431 Ave. P. *Id.*

The Insured Defendants assert that because Plaintiff's disclaimer letter was not addressed to 431 Ave. P, Plaintiff never disclaimed coverage as to 431 Ave. P, the only Insured Defendant named in the underlying actions. *See* Insured Defs.' Br. at 2, 6–7. The Insured Defendants further argue that even if the April 2008 letter was properly addressed, it was untimely. *Id.* at 7–9. For both of these reasons, the Insured Defendants argue that Plaintiff is now estopped from disclaiming coverage as to 431 Ave. P. *Id.* at 5–9.

Plaintiff contends that its April 2008 letter was an effective disclaimer of coverage as to 431 Ave. P because it was addressed to 431 Ave. P's members. Pl.'s Reply at 1–5. However, even if the April 2008 disclaimer letter was ineffective, Plaintiff argues that its commencement of this declaratory judgment action effectively disclaimed coverage. Pl.'s Reply Br. at 5.

Under New York common law, an insurer may be estopped from asserting even a valid defense to coverage under its policy "if the insurer unreasonably delays in disclaiming coverage and the insured suffers prejudice as a result of that delay." *Bluestein & Sander v. Chicago Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002) (citing *Globe Indem. Co. v. Franklin Paving Co.*, 77 A.D.2d 581, 430 N.Y.S.2d 109, 111 (N.Y. App. Div. 2d Dep't 1980)). However, where an insurer timely reserves its right to decline coverage and takes no action inconsistent with that denial of coverage, estoppel does not apply. *Pereira v. Gulf Ins. Co.*, 330 F. App'x 5, 6 (2d Cir. 2009); *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006) (holding that repeated and express reservations of rights "preclude arguments both as to waiver and as to equitable estoppel"); *O'Dowd v. Am. Sur. Co. of N.Y.*, 3 N.Y.2d 347, 355, 144 N.E.2d at 363 (N.Y. 1957). An insurer's defense of an action against the insured after reserving its right to

disclaim coverage is not inconsistent with a denial of coverage. *See Tudor Ins. Co. v. First Advantage Litig. Consulting, LLC*, Nos. 11 Civ. 3567, 11 Civ. 8923, 2012 WL 3834721, at *11 (S.D.N.Y. Aug. 21, 2012) (Forrest, J.) (noting it is "well established that any insurer may, by timely notice to the insured, reserve its right to claim that the policy does not cover the situation at issue, *while defending the action*") (quoting *O'Dowd*, 3 N.Y.2d at 355, 144 N.E.2d 359, 363 (N.Y. 1957)), *aff'd sub nom. First Advantage Litig. Consulting, LLC v. Am. Int'l Specialty Lines Ins. Co.*, Nos. 12-3830-cv, 12-3841-cv, 2013 WL 2150811 (2d Cir. May 20, 2013).

In this case, it is undisputed that Plaintiff first received notice of a potential claim on June 22, 2007. Myrtetus Aff. at ¶ 10; Sitt Aff. at ¶ 37. It is also undisputed that Plaintiff sent a letter to all of the Insured Defendants on July 17, 2007 asking the Insured Defendants to cooperate with its investigation into the alleged claim and reserving its right to disclaim coverage. Myrtetus Aff., Ex. N. On October 2, 2007, Plaintiff sent a second letter to the Insured Defendants indicating that it had retained counsel to defend 431 Ave. P but that it nonetheless continued to reserve all of its rights to disclaim coverage. *Id.*, Ex. O.

Plaintiff's July 2007 reservation letter was sent a mere three and a half weeks after Plaintiff became aware of a potential claim. Courts within the Second Circuit have repeatedly upheld as timely reservation of rights letters sent by insurers within weeks of learning of a potential claim. *See* Brief for Appellant-Defendant, *Pereira*, 2008 WL 6479741, at *1 (2d Cir. Oct. 2, 2008) (No. 08-1430) and *Pereira*, 330 F. App'x at 6 (reservation of rights letter was timely where it was sent three and a half weeks after learning of potential claim); *Tudor Ins. Co.*, 2012 WL 3834721, at *2, *4, *11 (reservation of rights letter sent two months after filing of lawsuit was timely); *cf. Liberty Ins. Underwriters Inc. v. Great Am. Ins. Co.*, No. 09 Civ. 4912, 2010 WL 3629470, at *9 (S.D.N.Y. Sept. 17, 2010) (Cote, J.) (citing New York cases holding

that a disclaimer issued within one month of an insurer's obtaining sufficient facts regarding the basis of the disclaimer is reasonable as a matter of law). Because Plaintiff's July 2007 reservation letter was sent a mere three and a half weeks after Plaintiff became aware of a potential claim, the letter timely reserved all of its rights under the policy.

It is irrelevant to the estoppel analysis that Plaintiff never specifically reserved its right to disclaim based on late notice of the claim, or any other specific basis, since Plaintiff's letter clearly and unambiguously reserved all of its rights. *See Pereira*, 330 F. App'x at 6 (where an insurance carrier reserves its right to disclaim coverage based on certain defenses, it will not be precluded from disclaiming coverage based on other defenses so long as the reservation letter asserted a general reservation as to all rights under the policy); *Globecon Grp.*, 434 F.3d at 176; *Tudor Ins. Co.*, 2012 WL 3834721, at *11 ("Where an insurer ultimately disclaims coverage and does so on a different ground that it initially-identified to an insured, a reservation of rights as to the other grounds precludes estoppel."). In this case, Plaintiff's July 2007 letter stated: "No action taken on our part to investigate or otherwise handle this matter means that we have waived any of our rights, including, *but not limited to*, the specific reservations cited in this letter. We *reserve all of our rights*, including the right to disclaim coverage if such declination is indicated." Myrtetus Aff., Ex. N (emphasis added). Plaintiff's October 2007 letter contained this same language, and further stated: "We write to advise you that we are defending this matter only *while reserving all of our rights* under the policy." *Id.*, Ex. O (emphasis added). Thus, although the October 2007 letter explicitly cited several specific policy exclusions that might apply, namely those for construction, use of independent contractors, and pre-existing damage, *id.*, Plaintiff's "reservation of rights as to other grounds precludes estoppel." *Tudor Ins. Co.*, 2012 WL 3834721, at *11.

Having established that Plaintiff timely reserved its right to disclaim coverage under the Insurance Policy, we turn to whether Plaintiff actually effectuated a disclaimer. On April 24, 2008, Plaintiff sent a letter to Ralph Sitt, Carolyn Kassin, Eddie Sitt, and Davit Sitt disclaiming coverage under the policy with regards to the underlying lawsuits. *Id.*, Ex. P. The Insured Defendants assert that because Plaintiff's disclaimer letter was not addressed to 431 Ave. P, Plaintiff never disclaimed coverage as to 431 Ave. P, the only Insured Defendant named in the underlying actions. *See* Insured Defs.' Br. at 2, 6–7. This Court need not determine whether Plaintiff's April 2008 disclaimer letter was effective as to 431 Ave. P, since it is undisputed that the commencement of this action on May 24, 2010 effectively disclaimed coverage. *See Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 277 (2d Cir. 2008) (under New York law, an insurer may disclaim coverage by filing for declaratory judgment, even absent any prior disclaimer).

For the reasons discussed *supra*, this Court concludes the Insured Defendants failed to provide timely notice of a possible claim under the Insurance Policy. In addition, this Court finds Plaintiff timely reserved all of its rights under the Insurance Policy and has effectively disclaimed coverage based on the Insured Defendants' untimely notice. Consequently, Plaintiff is entitled to summary judgment with respect to the claims against the Insured Defendants.

### III. Allstate Did Not Timely Notify Plaintiff of Its Claim

Allstate, Mr. Bello's insurance company, paid Mr. Bello several several hundred thousand dollars to cover the damage to his home. Verveniotis Decl, Ex. D, at ¶ 15. As Mr. Bello's subrogee, Allstate is an "injured party" under New York state law. *See Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 179 (2d Cir. 2010) (treating insurance company that paid claim to its insured as an injured party under New York law); *Cont'l Ins. Co. v. Daewoo Shipbuilding*

& *Heavy Mach. Ltd.*, No. 86 Civ. 5255, 1987 WL 16163, at *2 (S.D.N.Y. Aug. 21, 1987) (Carter, J.) (subrogation puts "the subrogee in the shoes of the injured party").

NewYork Insurance Law § 3420 provides an injured party the right to independently provide notice to an insurer, even where the insured's notice is untimely or where the insured fails to provide any notice. N.Y. Ins. Law § 3420(a)(3); *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 174–75 (2d Cir. 2010). This right extends to an injured party's insurance carrier where that insurance carrier, having paid a claim to the injured party, is the subrogee of the injured party.[11] *Cont'l Ins. Co.*, 603 F.3d at 172, 174–75 (holding that insurance company, as subrogee of injured party, had independent right to provide notice to insurer of claim for property damage).

To take advantage of § 3420(a)(3), the injured party must demonstrate that he "'pursued his rights' to notify the insurer pursuant to Section 3420(a) 'with as much diligence as was reasonably possible' under the circumstances." *Id.* at 175–76 (quoting *Malik v. Charter Oak Fire Ins. Co.*, 60 A.D.3d 1013, 1016, 877 N.Y.S.2d 114, 118 (N.Y. App. Div. 2d Dep't 2009)); *see also* N.Y. Ins. Law § 3420(a)(4) (requiring injured party to show that "notice was given as soon as was reasonably possible" after the prescribed time). This standard is more lenient than the standard used to determine the reasonableness of the insured party's notice and applies even where the insured party has already provided notice to its insurance carrier. *Cont'l Ins. Co.*, 603 F.3d at 176 (citing, *inter alia*, *Becker v. Colonial Co-op. Ins. Co.*, 24 A.D.3d 702, 704, 806 N.Y.S.2d 720, 723 (N.Y. App. Div. 2d Dep't 2005)). The injured party bears burden of proving

---

[11] Plaintiff argues that § 3420 applies only to claims of bodily injury or death. Pl.'s Reply Br. at 14. While certain provisions within § 3420 are explicitly limited to claims of personal injury or death, *see e.g.*, § 3420(d)(1) (requiring an insurer, within sixty days of a request, to confirm insurance coverage and policy limits in "a claim arising out of the death or bodily injury of any person"), the provisions permitting notice by an injured party or other claimant are not so limited, *see, e.g.*, § 3420(a) (not specifying any types of insurance claims); *see also Cont'l Ins. Co.*, 603 F.3d at 177–78 (holding that § 3420(a) applies to property damage claims). In addition, the Second Circuit has explicitly held that an insurance company has an independent right to provide notice of a claim, and that this right extends to claims for property damage. *Id.*

that he or she "acted diligently in attempting to ascertain the identity of the insurer, and thereafter expeditiously notified the insurer." *Spentrev Realty Corp. v. United Nat. Specialty Ins. Co.*, 90 A.D.3d 636, 637, 933 N.Y.S.2d 725, 727 (N.Y. App. Div. 2d Dep't 2011).

Courts in New York have routinely found, as a matter of law, that an injured party failed to exercise due diligence where that party did nothing more than attempt to contact the insured party a handful of times via telephone or letter over the course of several months. For example, in *Travelers Indem. Co. of Am. v. S. Gastronom Corp.*, an individual was severely injured on September 11, 2003 when he fell into an open sidewalk entrance to the basement of a New York restaurant; he ultimately died from his injuries. No. 06-CV-5536, 2010 WL 1260202, at *1 (E.D.N.Y. Mar. 3, 2010) (Reyes, M.J.). By letter date October 14, 2003, the individual's estate advised the restaurant of a lawsuit against it and requested that the restaurant provide it with the name of, and forward a copy of the letter to, its insurance carrier. *Id.* at *9. Later that month, the estate sent a second letter attempting to obtain the restaurant's insurance information. *Travelers Indem. Co. of Am. v. S. Gastronom Corp.*, No. 06-CV-5536, 2010 WL 1292289, at *5 (E.D.N.Y. Apr. 1, 2010) (Townes, J.), *aff'd sub nom. Travelers Indem. Co. of Am. v. Estate of Zeygermakher ex rel. Sidon*, 427 F. App'x 30 (2d Cir. 2011). More than six months later, on May 14, 2004, the estate called the restaurant and requested its insurance information. *Travelers Indem. Co.*, 2010 WL 1260202, at *9. When the restaurant declined to provide that information, the estate sent the restaurant a letter memorializing the conversation and again requesting that the restaurant provide him with the name of, and forward a copy of the letter to, its insurance carrier. *Id.* This Court held, as a matter of law, that these "three . . . attempts to ascertain [the restaurant's] insurer over a period of nearly seven months even 'generously stretched, cannot excuse such a chronology of inactivity.'" *Travelers Indem. Co.*, 2010 WL 1292289, at *5

(quoting *Richter v. Fireman's Fund Am. Ins. Co.*, 27 A.D.2d 223, 277 N.Y.S.2d 737, 737 (N.Y. App. Div. 1st Dep't 1967)); *see also Tower Ins. Co. of New York v. Lin Hsin Long Co.*, 50 A.D.3d 305, 309–11, 855 N.Y.S.2d 75, 79–81 (N.Y. App. Div. 1st Dep't 2008) (noting that party who was injured on January 29, 2005 did not, as a matter of law, diligently attempt to ascertain the insured party's insurance carrier despite various efforts, including sending letters to the insured party on March 8 and April 11, 2005 and filing a complaint against the insured party on July 12, 2005).

In this case, Allstate has failed to demonstrate that it exercised its right to provide notice with as much diligence as was reasonably possible under the circumstances. It is undisputed that Mr. Bello notified Allstate on March 14, 2006 that his residence had been damaged. Allstate's R. 56.1 St. of Add. Material Facts at ¶ 41; Paige Aff., Ex. 1. Nonetheless, Allstate waited nearly three months, until June 1, 2006, before attempting to ascertain the identity of 431 Ave. P's insurance carrier. On that day and the next, Allstate called two separate phone numbers in an attempt to reach Eddie Sitt or his company; in one instance, Allstate left a voicemail, and in the other, the woman who picked up the phone hung up. Allstate's R. 56.1 St. of Add. Material Facts at ¶¶ 42–43. Unable to reach anyone by phone, Allstate sent a letter on June 2, 2006 to Eddie Sitt via his company informing him that Allstate believed he was "legally responsible for the damages" to the Bello home and asking him to either pay the claim or forward the letter to his insurance carrier. *Id.* at ¶ 44; Myrtetus Aff., Ex. K. Allstate admits it did not attempt any further contact or investigation for another year, until June 5, 2007, when it sent a second letter to 431 Ave P, Fimor, and Hudson informing them that the Bello residence would be demolished and stating that it believed the companies were responsible for the damage. Allstate's R. 56.1 St. of Add. Material Facts at ¶ 47; Myrtetus Aff., Ex. F. as 431 Ave. P's insurance carrier, Plaintiff

responded to Allstate's letter on June 25, 2007. Allstate's R. 56.1 St. of Add. Material Facts at ¶¶ 48–50.

Plaintiff's handful of attempts over more than a year to determine the Insured Defendants' carrier is insufficient, as a matter of law, to constitute due diligence. *See Travelers Indem. Co.*, 2010 WL 1292289, at *4–5; *Tower Ins. Co.*, 50 A.D.3d at 309–11, 855 N.Y.S.2d at 79–81; *Richter*, 27 A.D.2d at 224–25, 277 N.Y.S.2d at 738–39 (injured party's attempts to ascertain identity of insurer through two letters to the insureds, followed by, *inter alia*, unsuccessful attempts to reach the insureds by phone three months later and then a request for the motor vehicle accident report three months after that, was insufficient as a matter of law to demonstrate diligence).

Consequently, Allstate did not timely notify Plaintiff of its claim. Plaintiff is therefore entitled to disclaim coverage as to Allstate, which it undisputedly did by filing this action. *See Emp'rs Ins. of Wausau*, 522 F.3d at 277 (under New York law, an insurer may disclaim coverage by filing for declaratory judgment, even in the absence of any prior disclaimer and absent a showing of prejudice).

## IV. Summary Judgment is Inappropriate as to the Remaining Defendants

MMG was served in this action on June 4, 2010, Verveniotis Decl., Ex. K, less than one month after the complaint was filed. MMG has never made an appearance in this action, responded to the complaint, or opposed summary judgment. The Bellos were served in this action on May 16, 2013. *See* Dkt Nos. 59–60. The Bellos have not made an appearance in this action, responded to the complaint, or opposed summary judgment. Where a defendant fails to appear, the proper procedure is to move for a default judgment, not summary judgment. *Cont'l Ins. Co. v. Huff Enters. Inc.*, No. 07-cv-3821, 2009 WL 3756630, at *2–4 (E.D.N.Y. Nov. 6,

22

2009) (Garaufis, J.). This Court therefore denies without prejudice Plaintiff's summary judgment motion as to MMG and the Bellos.

In this case, the Clerk of the Court has not yet entered default against MMG or the Bellos and Plaintiff has yet to move for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure and Local Civil Rules 55.1 and 55.2. When that application is properly made, this Court will enter default judgment against Defendants MMG and the Bellos.

## CONCLUSION

For the reasons described above, Plaintiff's motion for summary judgment is granted as to the Insured Defendants and Allstate. Plaintiff's motion for summary judgment is denied as moot as to MMG and the Bellos, against whom default judgment will be entered upon a proper application by Plaintiff.

It is further declared that:

1) 431 Ave. P LLC, Ralph Sitt, Carolyn Kassin, Eddie Sitt, and David Sitt breached their obligation under the U.S. Underwriters Insurance Policy by failing to notify U.S. Underwriters as soon as practicable of the occurrence of damage to the Bello home;

2) U.S. Underwriters has no obligation to defend or indemnify 431 Ave. P LLC, Ralph Sitt, Carolyn Kassin, Eddie Sitt, or David Sitt under the U.S. Underwriters Policy in the State Actions with respect to damage to the Bello home and has no liability or obligation to 431 Ave. P LLC, Ralph Sitt, Carolyn Kassin, Eddie Sitt, and David Sitt to pay or satisfy any damages awards, judgments or other costs or fees entered against 431 Ave. P LLC, Ralph Sitt, Carolyn Kassin, Eddie Sitt, or David Sitt in the State Actions;

3) U.S. Underwriters owes no duty or obligation to Allstate to pay, satisfy, or otherwise be liable for any judgment entered against 431 Ave. P LLC, Ralph Sitt, Carolyn Kassin, Eddie Sitt, or David Sitt in the State Actions.

**SO ORDERED**

Dated:  Brooklyn, New York
            June 19, 2013

HON. WILLIAM F. KUNTZ, II
United States District Judge